[Cite as *State v. Merry*, 2012-Ohio-2910.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Julie A. Edwards, J. |
| -vs- | : | |
| | : | Case No. 2011CA00203 |
| JOHN ERIC MERRY | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of
                              Common Pleas, Case No. 2011CR0659


JUDGMENT:                     AFFIRMED


DATE OF JUDGMENT ENTRY:       June 22, 2012


APPEARANCES:

For Appellant:                          For Appellee:

RODNEY A. BACA                          JOHN D. FERRERO, JR.
610 Market Ave. N.                      STARK COUNTY PROSECUTOR
Canton, OH 44702                        RONALD MARK CALDWELL
                                        110 Central Plaza South, Ste. 510
                                        Canton, OH 44702-1413

*Delaney, J.*

{¶1}   Appellant John Merry appeals from the August 31, 2011 judgment entry of the Stark County Court of Common Pleas convicting him of one count of felonious assault and sentencing him to a prison term of 7 years.

*FACTS AND PROCEDURAL HISTORY*

{¶2}   Appellant has two prior convictions of domestic violence, which he stipulated to in this case.  As a result of the facts below, appellant was charged with one count of felonious assault pursuant to R.C. 2903.11(A)(1) and/or (A)(2), a felony of the second degree, and one count of domestic violence pursuant to R.C. 2919.25(A), a felony of the third degree.

{¶3}   The following facts were adduced at appellant's jury trial.

{¶4}   On April 30, 2010, sometime after 11:00 p.m., Courtney Lamp appeared at the home of Michael Wolfe.  Wolfe had known Lamp for several years and they dated briefly.  At one point in their relationship, Lamp told Wolfe she was pregnant but it "probably wasn't his."  They spoke from time to time and Lamp had shown him pictures of her baby.  Wolfe also knew Lamp was in an on and off relationship with appellant.

*The Assault*

{¶5}   As of April 30, 2010, Wolfe and Lamp hadn't spoken for a few weeks, but Lamp texted Wolfe and asked if she could come over.  Lamp mentioned she was coming from a party at appellant's house.

{¶6}   Lamp arrived and they both had a few beers.  In the meantime, Wolfe's brother and his girlfriend, who were also staying at the house, went out for the

evening. Wolfe and Lamp were alone in the house. According to Wolfe, they "got physical" and then fell asleep in his bed.

{¶7} Around 2:30 a.m., they were awakened by the sound of a loud vehicle in the drive. Wolfe came downstairs and opened his front door to find appellant and two friends of his. Appellant said he wanted to see Lamp right now. Wolfe shut and locked the door, and yelled up the stairs to Lamp that appellant was outside. She said she didn't want to see him.

{¶8} Appellant and his two friends started beating on the front door. Lamp told Wolfe she needed to go outside because she was afraid appellant might take things out of her car and she had left it unlocked. Wolfe and Lamp dressed, came downstairs, and went outside. Wolfe was wearing jeans, a hat, and flip-flop sandals.

{¶9} According to Wolfe, appellant seemed upset. He had opened the glass front door and said to Lamp, "You [expletive] him already?" Lamp replied that it was none of his business. Appellant then asked Wolfe if he'd had sex with Lamp, and Wolfe didn't answer. At some point, appellant shook Wolfe's hand and made a comment to the effect of, "Congratulations, you can have her."

{¶10} Lamp headed toward her car and appellant walked after her. Wolfe saw appellant with his finger in Lamp's face, screaming and cursing. Lamp was crying. At one point, Wolfe saw appellant grab Lamp by the arm and "yank" her. Lamp tried to pull away but appellant grabbed her by her shirt, pulled his fist back, and said, "Your ass is mine, bitch."

{¶11} Wolfe yelled at appellant to stop and to leave because the police were coming. Appellant let Lamp go, and she ran back toward the house. As Wolfe walked

past appellant, appellant spun around and struck him in the face. Wolfe believed he had been struck with an object. Blood gushed all over his face and he couldn't see. Appellant then struck Wolfe in the face a second time.

{¶12} Wolfe fell to his knees and appellant choked him from behind. Appellant continued to punch Wolfe and to throw him against the cars parked in Wolfe's driveway. A headlight was broken. Appellant repeatedly kicked Wolfe in the head.

{¶13} In the meantime, Lamp had gone back into the house to try to awaken Wolfe's brother and get him to intervene. Eventually someone did call 911 from inside the house.

{¶14} Appellant's friends wanted to leave but appellant said he wasn't done yet. Wolfe was in his underwear at this point because his pants had fallen off. Wolfe was still being hit and kicked, and he thought appellant's friends joined in although he couldn't tell which one. Eventually appellant and his two friends got into a car and took off.

*Wolfe's Injuries*

{¶15} Lamp accompanied Wolfe to Affinity Hospital that night and they talked to investigators. Wolfe was unable to see or to write, so Lamp wrote out his statement for him and he signed it. Wolfe learned that his orbital bone and some teeth were broken. His eye was shut for a week and a half, and he experienced lasting numbness in his face. He still has a scar on his head.

*Lamp Invokes her Right to Remain Silent*

{¶16} Courtney Lamp testified at trial and dissimulated. Although she corroborated the basic facts of Wolfe's story in terms of going to Wolfe's house,

appellant showing up, the conversation that took place, and the fact that appellant was upset, she minimized everything that occurred. She claimed not to know who started the fight; she didn't remember anything she told police about the incident; she has no independent memory of appellant threatening her and only wrote it down in her statement because Wolfe told her about it. She claimed not to remember anything about the night of the assault, but ultimately admitted that she saw appellant strike Wolfe many times, in the arms, shoulders, and head. She denied that any act of domestic violence occurred and denied that she tried to get away from appellant. She implied Wolfe started the altercation by approaching appellant in a "loud, angry" manner.

{¶17} An issue arose during Lamp's testimony about inconsistencies between her trial testimony and her grand jury testimony. When confronted with her grand jury testimony, Lamp remembered she told the grand jury appellant pulled his fist back and told her "Your ass is mine" and appellant dragged her around the side of the house. She agreed she told the grand jury appellant came after Wolfe, and appellant hit Wolfe in the face with a rock. Lamp denied, however, that she ever told Wolfe her baby was his.

{¶18} The trial court declared Lamp a court's witness and appointed counsel for her. Outside of the presence of the jury, Lamp's counsel advised she invoked her 5th Amendment right to remain silent. When the jury returned to the courtroom, the trial court advised the jury of Lamp's invocation of her right to remain silent and her testimony ended.

*The Defense Case*

{¶19} Appellant's two friends who were with him the night of the assault testified as defense witnesses. David Ramsey claimed to only "vaguely" remember the fight. Nicholas Sampsel stated that the three went to Wolfe's house because appellant wanted to confront Lamp. Sampsel then claimed he didn't know how the fight started because he wasn't focused on it and he had no idea how Wolfe was injured.

{¶20} Appellant testified on his own behalf. He referred to Lamp as his "fiancée," despite the fact that he claimed he had not seen her or talked to her since the incident occurred. Appellant minimized the fight and his role in it, repeatedly claiming Wolfe came toward him "in an aggressive manner." He claimed he wasn't able to get away from Wolfe and that Wolfe had in fact hurt him.

{¶21} On cross examination, appellant admitted he has two prior convictions for felonious assault and two prior convictions for domestic violence. He denied he was upset when he saw Lamp's car in Wolfe's driveway, and claimed he came to the house only because he wanted to find out what was going on. He had no idea how Wolfe's orbital bone was broken and denied hitting Wolfe in the head.

{¶22} Wolfe had earlier testified that he saw appellant and Lamp together at Clay's Park with the baby, after the indictment but before trial. Appellant and Lamp denied this. Appellee's sole rebuttal witness was an individual who knew both appellant and Wolfe. This witness saw Lamp and appellant together with a baby at Clay's Park in July, after the assault and before the trial.

{¶23} Appellant was found guilty of the charge of felonious assault and not guilty of the charge of domestic violence. The jury made the specific finding that appellant did not cause physical harm by means of a deadly weapon but did cause serious physical harm to Wolfe.

{¶24} The trial court sentenced appellant to a prison term of 7 years, noting his history of assaultive behavior and his angry, violent nature, in addition to the extent of Wolfe's injuries.

{¶25} Appellant now appeals from the judgment entry of his conviction and sentence.

{¶26} Appellant raises two Assignments of Error:

{¶27} "I. THE EVIDENCE IS INSUFFICIENT TO SUSTAIN THE CONVICTION AND THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶28} "II. THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."

I.

{¶29} In his first assignment of error, appellant contends that his conviction is against the manifest weight and sufficiency of the evidence.

{¶30} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the

syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilty beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶31} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, at 387, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶32} Appellant was convicted of one count of felonious assault pursuant to R.C. 2903.11(A)(1), which states: "No person shall knowingly * * * cause serious physical harm to another * * *." Appellant argues on appeal that he presented sufficient evidence of self-defense and his conviction is therefore against the sufficiency and manifest weight of the evidence. We disagree.

{¶33} Self-defense is a "confession and avoidance" affirmative dense in which appellant admits the elements of the crime but seeks to prove some additional

element that absolves him of guilt. *State v. White*, 4th Dist. No. 97 CA 2282 (Jan. 14, 1998). The affirmative defense of self-defense places the burden of proof on a defendant by a preponderance of the evidence. *In re Collier*, 5th Dist. No. 01 CA 5 (Aug. 30, 2001), citing *State v. Caldwell*, 79 Ohio App.3d 667, 679, 607 N.E.2d 1096. The proper standard for determining whether a criminal defendant has successfully raised an affirmative defense is to inquire whether the defendant has introduced sufficient evidence which, if believed, would raise a question in the minds of reasonable persons concerning the existence of the issue. *State v. Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195 (1978), paragraph one of the syllabus.

{¶34} We find in the instant case appellant failed to establish sufficient evidence which, if believed by the jury, would raise a question in the minds of reasonable persons concerning the existence of the issue of self-defense.

{¶35} To establish self-defense in the use of non-deadly force, the accused must show 1) he was not at fault in creating the situation giving rise to the altercation; 2) the accused had reasonable grounds to believe and an honest belief, even though mistaken, that some force was necessary to defend himself against the imminent use of unlawful force; and 3) the force used was not likely to cause death or great bodily harm. *State v. Hoopingarner*, 5th Dist. No. 2010AP 07 00022, 2010-Ohio-6490, ¶ 31, citing *State v. Vance*, Ashland App. No. 2007-COA-035, 2008-Ohio-4763, ¶ 77 (citations omitted). If any one of these elements is not proven by a preponderance of the evidence, the theory of self-defense does not apply. *State v. Williford*, 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990).

{¶36} We find the jury could reasonably believe appellant was at fault in creating the situation giving rise to the altercation by appearing at Wolfe's house, confronting Lamp, and physically attacking Wolfe, causing serious injury. The record is devoid of any evidence appellant had reasonable grounds to use some force necessary to defend himself against the imminent use of unlawful force. Even if the jury believed appellant's own testimony that he thought Wolfe was coming after him, or after Lamp, appellant's extreme reaction in severely beating Wolfe to the extent that he broke his eye socket was neither necessary nor justifiable. Finally, of course, the jury found that appellant did in fact cause great bodily harm. Appellant has therefore failed to establish any of the elements of self-defense, and therefore this theory does not apply.

{¶37} As finder of fact the jury was in the best position to evaluate the credibility of the witnesses, and was free to believed some testimony and discard others. Clearly it did so because appellant was found guilty of felonious assault and not domestic violence, and of causing serious physical harm to Wolfe but not that he used a weapon.

{¶38} In short, the record amply demonstrates the trier of fact, in resolving conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing the evidence in the light most favorable to appellee, we further find a rational trier of fact could have appellant guilty of felonious assault beyond a reasonable doubt.

II.

{¶39} In his second assignment of error, appellant contends that he received ineffective assistance of counsel because of certain alleged errors by defense trial counsel.  We disagree.

{¶40} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See*, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶41} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶42} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

{¶43} A court may dispose of a case by considering the second prong first, if that would facilitate disposal of the case. *State v. Bradley,* 42 Ohio St.3d 136, 143,

538 N.E.2d 373 (1989), citing *Strickland,* 466 U.S. at 697. We note that a properly licensed attorney is presumed competent. See *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 209 N.E.2d 164 (1965); *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999). Further, reviewing courts must refrain from second-guessing strategic decisions and presume that counsel's performance falls within the wide range of reasonable legal assistance. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

{¶44} The first instance of alleged ineffectiveness occurred during the state's direct examination of Wolfe. Wolfe repeated his conversation with Lamp upon appellant's arrival at the house without objection by defense counsel. The trial court called a sidebar and the following conversation occurred:

THE COURT: Just so we have a record, I assume that it is for trial strategy purposes that you were allowing this hearsay to come in.

[Defense counsel:] You honor, I object to getting into this as nonresponsive and that ---

THE COURT: Well, I am talking first of all, that she had been asking – he has been relating all kinds of conversations with a third party.

[Defense counsel:] Correct.

THE COURT: There haven't been any objections from defense counsel.

[Defense counsel:] Correct.

THE COURT: And so that there's no issue of in this case should have to go up that you are, in fact, aware of that and that was your intent to allow it to come in.

[Defense counsel:] Yes.

THE COURT:  All right.

[Defense counsel:]  At this point I object to the nonresponsive nature of this and to the hearsay of what someone else has told him or what some other statement as said by a third party relating now for the truth of the matter asserted.

THE COURT:  I will sustain the objection.  Let's proceed.

* * *.

{¶45} Appellant characterizes the failure to object until prompted by the trial court as a lack of competence on the part of defense counsel, but we disagree.  The failure to make objections, alone, generally does not establish ineffective assistance of counsel because the decision is viewed as trial strategy.  *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 103.  Moreover, appellant cannot demonstrate prejudice because counsel did object upon prompting by the trial court, and the trial court sustained the objection and gave a curative instruction.

{¶46} Appellant also cites Wolfe's outburst that appellant was on parole.  Similarly, defense counsel's failure to object may be characterized as trial strategy and not deficient performance; counsel may have opted not to draw further attention to the comment.  Moreover, appellant cannot demonstrate prejudice because the jury was aware of appellant's criminal record, at least in part, by virtue of the stipulation to two domestic violence convictions.

{¶47} Appellant next points to an issue which arose regarding use of the transcript of grand jury testimony to cross-examine Lamp.  After Lamp's cross-examination, defense trial counsel asked to review the grand jury transcript and the

trial court refused. Upon redirect, when it became evident that Lamp's testimony might deviate from what she told the grand jury, the state asked if looking at the transcript of her grand jury testimony would refresh her recollection, and Lamp agreed. At this point, defense counsel again requested to review the transcript, and this time the trial court agreed. We find counsel's performance was not deficient with regard to the transcript of grand jury testimony. Defense trial counsel had the transcript, therefore, for re-cross of Lamp. Moreover, in the overall context of Lamp's testimony, appellant cannot demonstrate prejudice because Lamp's testimony was favorable to appellant.

{¶48} Finally, appellant contends that defense trial counsel should have introduced appellant's prior criminal history before the state had the opportunity to do so on cross-examination of appellant. As noted above, appellant stipulated to his prior domestic violence criminal convictions. We find any difference in the jury's perception had appellant testified to the additional felonious assault convictions on direct as opposed to on cross-examination to be minimal. Appellant infers the jury would conclude appellant hid the extent of his criminal history, but appellee points out that the state did not argue this point in closing, ignored it, and made no gains from it. In the context of the entire trial and in light of the overwhelming evidence against appellant, we are unwilling to find prejudice in the manner in which his prior criminal history was revealed.

{¶49} Other courts have come to the same conclusion. While it may be "customary practice for attorneys to disclose a witness' prior felony convictions on direct," we do not agree that the failure to do so constitutes ineffective assistance.

"Thus, while it may be preferential for counsel to disclose a witness' prior felony convictions on direct examination, we are not convinced that the results of the trial would be different if he had done so."  *State v. Kachovee*, 4th Dist. No. 98CA2562, 1999 WL 38994 (Jan. 25, 1999), appeal not allowed, 85 Ohio St.3d 1486, 709 N.E.2d 1214 (1999).

{¶50} We find appellant's trial counsel was not deficient and appellant's second assignment of error is overruled.

{¶51} For the foregoing reasons, appellant's two assignments of error are overruled and the judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, P.J.

Wise, J. and

Edwards, J. concur.

HON. PATRICIA A. DELANEY

HON. JOHN W. WISE

HON. JULIE A. EDWARDS

[Cite as *State v. Merry*, 2012-Ohio-2910.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JOHN ERIC MERRY | : | |
| | : | |
| | : | Case No. 2011CA00203 |
| Defendant-Appellant | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.

_____
HON. PATRICIA A. DELANEY

_____
HON. JOHN W. WISE

_____
HON. JULIE A. EDWARDS