[Cite as *State v. McCauley*, 2020-Ohio-2813.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 19-CA-84 |
| | : | |
| DENNIS MCCAULEY | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Licking County Court of
                                Common Pleas, Case No. 19CA232

JUDGMENT:                       AFFIRMED

DATE OF JUDGMENT ENTRY:         May 5, 2020

APPEARANCES:

For Plaintiff-Appellee:                    For Defendant-Appellant:

WILLIAM C. HAYES                           WILLIAM T. CRAMER
LICKING CO. PROSECUTOR                     470 Olde Worthington Rd., Ste 200
PAULA M. SAWYERS                           Westerville, OH 43082
20 S. Second St., Fourth Floor
Newark, OH 43055

*Delaney, J.*

{¶1} Appellant Dennis McCauley appeals from the August 23, 2019 Judgment Entry of the Licking County Court of Common Pleas. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} The parties agree to the following statement of the facts and procedural history.

{¶3} A parole-violator-at-large warrant existed for appellant's arrest. Two parole officers, Thoms and Bailey, picked up appellant and his girlfriend, Paulleana Smith, on March 28, 2019. Appellant provided a home address of 51 North Fourth Street, Apartment D, Newark, and the parole officers transported appellant and Smith to the residence.

{¶4} Officers searched the residence and Thoms found a small bag containing a little over half a gram of methamphetamine. The bag was found wrapped inside a "do-rag" or "wave cap" found between the television and a DVD player in the living room. Thoms saw appellant wearing a similar cap on a prior occasion.

{¶5} Bailey found small empty baggies matching that found by Thoms. Bailey also recovered what appeared to be an "owe list," typically documenting money owed to drug dealers. The spare baggies and "owe list" were found in a nightstand drawer in the bedroom. Bailey also found a baggie containing residue hidden in a speaker on a table beside the bed. Finally, officers recovered three cell phones and $1600 cash. Upon finding the methamphetamine, officers concluded the search without searching the kitchen.

{¶6}   Appellant and Smith were both present during the search. Appellant was asked whether there were drugs in the house before the search and said no. Smith said she didn't live there, but refused to leave when given an opportunity to do so. Appellant and Smith were both agitated during the search. As the officers began to discover items, appellant and Smith both became argumentative, and Smith became physically disruptive. As a result, officers handcuffed both. Appellant told the officers that the "do-rag" was his, but claimed that the methamphetamine found in it belonged to a prostitute he hired earlier that day. Appellant said the "owe list" was his and the room where it was found was his bedroom. Appellant did not claim that anyone else lived with him.

{¶7}   Thoms and Bailey testified that a violator-at-large warrant is intended to find an offender and determine his residence, and that arrest is not required. The officers decided to arrest appellant, however, upon finding the drugs in his home.

{¶8}   Detective Green was present for the March 28 search to collect evidence. He testified that based on his experience, the amount of baggies and the "owe list" indicate someone was dealing methamphetamine.

{¶9}   On April 1, 2019, Detective Conley listened in on a conversation between appellant and Smith. A partial recording of the conversation was played for the jury. Conley recognized the voices on the recording as appellant and Smith. Conley heard appellant say, "I have 14 in the house," and refer to an "oven mitt." Conley presumed appellant was referring to 14 grams of some drug and obtained a search warrant for appellant's residence.

{¶10} Green testified that Conley told him about the phone call and he told Conley to get a warrant. While Conley was getting the warrant, Green obtained keys for the

apartment. Green executed the search warrant and found the drugs exactly where appellant told Smith to look: under the sink by the ice cream cup in a blue oven mitt. The oven mitt contained a larger bag that contained four smaller bags of methamphetamine. The weight as measured in the field was a little over 8 grams.

{¶11} Although they did not recover 14 grams, Conley testified that he listened to the rest of the recording after the search and heard appellant also mention a silver glasses case. Conley presumed that the other methamphetamine was in the glasses case, but the remaining drugs were never recovered. Conley was positive that Smith did not access the house and remove them prior to the search.

{¶12} Green testified that the apartment had been secured following the first search and the building was being watched. Nonetheless, Green was unable to say for certain that Smith did not get the other drugs. Green testified that they were not guarding the apartment and did not see Smith when they returned to watch the building. Green speculated that "14" could be code for a quarter of an ounce or seven grams, which was approximately what was found.

{¶13} After the warrant was executed and drugs were found, Conley interviewed appellant. Appellant told Conley that he sold drugs from his residence, that Smith transported drugs for him, and that he owed his dealer for some of the methamphetamine that the police recovered from his residence. Appellant identified his dealer and indicated that the dealer generally fronted him an ounce at a time. Appellant said he was just dealing drugs to supplement his income until he began receiving social security disability.

{¶14} Green testified that he had never met appellant before, but had been hearing his name from informants on the streets for a couple of months. Green had never

met Smith before, either, and knew nothing about her.  During the March 28th search, Smith told Green that she was a recovering addict who had quit using because she was pregnant.

{¶15} The drugs recovered from the March 28th search tested positive as methamphetamine and weighed .661 grams.  The drugs recovered from the April 1st search also tested positive as methamphetamine.

{¶16} Appellant testified in his own defense.  He admitted a prior felony conviction for breaking and entering, and that he was on post-release control after serving a prison term.  Appellant also testified to receiving social security disability.

{¶17} Appellant testified that he had a relationship with Smith, she was pregnant with his child, and he gave her a place to stay.  Appellant was furious with Smith over her drug use because he did not want his child born addicted.  Smith used drugs several times a day.  Smith had 8 other children, but did not have custody of any of them due to her addiction.  Appellant kept trying to hide drugs from Smith, but she would get abusive without them and even tried to stab him.

{¶18} Appellant was afraid that Smith had tried to manipulate him.  She was seven months pregnant when appellant was arrested, but he had not heard from her since the April 1st conversation.  Appellant heard rumors that she had been in trap houses and thought she may have been working for police to set him up.  Appellant claimed Smith was trafficking drugs and he tried to stop it; she would bring bundles of clothes and bags to his house, though, and he was unable to search all of it.  Appellant never turned Smith in because he didn't want to lose his child.  Appellant said he hid the drugs rather than dispose of them because her drug supplier would have retaliated against her.

{¶19} Appellant testified he last used drugs when he went to prison 4 years earlier. Appellant was to be released from post-release control early because he was consistently testing clean.

{¶20} Appellant testified there was some confusion over the summer of 2018 as to his supervision status. Appellant said that his supervisory officer said he was doing good, so he only needed to call or text once a month. And in June 2018, appellant signed paperwork for early release from supervision, but never heard back. Appellant kept calling and texting his supervisory officer through December 2018 without getting any response. When these incidents occurred in March and April of 2019, appellant purportedly was not sure if he was still under supervision.

{¶21} Appellant testified that the jury didn't hear the entire recording of his call with Smith. He said that during the first part of the call, Smith was begging him for drugs and asking him where they were because she was sick and needed to get high. Appellee only played the recording from the point where appellant finally gave in to Smith's demands. Appellant admitted he knew the conversation was being recorded and that he was speaking in code when he used "14" to refer to the drugs. Appellant meant that there was a quarter of an ounce in the house.

{¶22} Appellant denied telling law enforcement that he was using or selling drugs. However, appellant admitted telling police they were his drugs. He said he did it to protect Smith and his baby.

{¶23} Appellant testified that it was Smith who had the relationship with the drug supplier and had two children with him. The supplier would text Smith and tell her to come out front, and then drop off the drugs with her. The supplier also gave her the

baggies and would give her an extra bag of drugs, usually heroin, for her personal use. Smith had scales that she used to weigh the drugs that she kept in the coffee table drawer.

{¶24} Conley admitted Smith was a known drug addict and drug dealer, but denied that she was an informant for him. Conley admitted that the drugs could have been Smith's and appellant was covering for her. Furthermore, Thoms admitted that they never questioned Smith about the methamphetamine during the initial search because they were not there because of her and she claimed she was just visiting.

{¶25} Appellant was charged by indictment with one count of aggravated trafficking in drugs (methamphetamine) pursuant to R.C. 2925.11(A)(C)(1)(a) [Count I], a felony of the fifth degree; one count of aggravated trafficking in drugs (methamphetamine) pursuant to R.C. 2925.11(A)(C)(1)(b) [Count II], a felony of the third degree; and one count of aggravated trafficking in drugs (methamphetamine) pursuant to R.C. 2925.11(A)(2)(C)(1)(c) [Count III], a felony of the third degree.

{¶26} Appellant entered pleas of not guilty and filed a motion to suppress evidence seized from his apartment pursuant to a search warrant and custodial statements made by appellant. Appellee responded with a memorandum in opposition and the matter proceeded to evidentiary hearing on June 25, 2019. On June 27, 2019, the trial court overruled the motion to suppress by judgment entry.

{¶27} The matter proceeded to trial by jury and appellant was found guilty as charged. Appellant requested a pre-sentence investigation but the trial court proceeded to immediate sentencing. The trial court found Counts II and III merged for purposes of

sentencing and appellee elected to sentence upon Count II. The trial court thereupon sentenced appellant to a total aggregate prison term of 4 years.[1]

{¶28} Appellant now appeals from the trial court's judgment of conviction and sentence.

{¶29} Appellant raises three assignments of error:

**ASSIGNMENTS OF ERROR**

"I. APPELLANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL INTENTIONALLY ELICITED INFORMATION ABOUT APPELLANT'S CRIMINAL HISTORY."

"II.         THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING TO ORDER A PRESENTENCE INVESTIGATION PRIOR TO IMPOSING SENTENCE."

"III.         CLEAR AND CONVINCING EVIDENCE DEMONSTRATES THAT THE RECORD DOES NOT SUPPORT MAXIMUM PRISON TERMS."

**ANALYSIS**

I.

{¶30} In his first assignment of error, appellant argues he received ineffective assistance of counsel because defense trial counsel introduced evidence of his prior convictions. We disagree.

---

[1] Appellant was sentenced to a prison term of 1 year upon Count I and 3 years upon Count II, to be served concurrently. The trial court imposed an additional 1-year term for appellant's violation of post-release control.

{¶31} The issue of admission of appellant's post-release control status and his prior convictions was addressed before trial. The trial court cautioned appellee to avoid both topics, which was challenging because the case arose from a parole search. Appellee agreed, however, to avoid both topics in its case-in-chief; when the parole officers were questioned upon direct examination, for example, they referred to themselves generically as "law enforcement officers."

{¶32} Appellant asserts, though, that defense trial counsel negated these efforts altogether by asking Thoms about the violator-at-large warrant and whether appellant went to the probation office before the search upon cross-examination. Defense trial counsel also asked Thoms about his knowledge of appellant's post-release control history, and addressed the same topics with Bailey. Upon cross-examination of Green, defense trial counsel elicited testimony that Green "heard appellant's name on the street" from informants for several months. The cross-examination of Thoms prompted appellee to ask to approach the bench and to argue appellant opened the door to evidence of his criminal history. The trial court took a wait-and-see approach. Upon redirect, appellee asked about the officers about details of appellant's post-release control supervision.

{¶33} Appellant argues that defense trial counsel's "opening of the door" to evidence of his criminal history is ineffective assistance of counsel. To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See, Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the

circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶34} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶35} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. A court may dispose of a case by considering the second prong first, if that would facilitate disposal of the case. *State v. Bradley,* 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989), citing *Strickland,* 466 U.S. at 697. We note that a properly licensed attorney is presumed competent. See *Vaughn v. Maxwell,* 2 Ohio St.2d 299, 209 N.E.2d 164 (1965); *State v. Calhoun,* 86 Ohio St.3d 279, 714 N.E.2d 905 (1999).

{¶36} Further, reviewing courts must refrain from second-guessing strategic decisions and presume that counsel's performance falls within the wide range of reasonable legal assistance. *State v. Merry*, 5th Dist. Stark No. 2011CA00203, 2012-Ohio-2910, ¶ 42, citing *State v. Carter,* 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995). Debatable trial tactics do not establish ineffective assistance of counsel. *State v. Wilson*, 2018-Ohio-396, 106 N.E.3d 806, ¶ 36 (5th Dist.), citing *State v. Hoffner*, 102 Ohio St.3d 358, 365, 2004-Ohio-3430, 811 N.E.2d 48 (2004), ¶ 45.

{¶37} Appellant argues that defense trial counsel provided ineffective assistance in raising the topics of his post-release control status and criminal history, implying the evidence would have been otherwise inadmissible. Appellee responds, and we agree, that due to appellant's theory of the case, counsel had little choice but to raise the topic of appellant's criminal history to maintain credibility. Appellant's defense was that the drugs weren't his. Appellant argued from the beginning of the trial that the drugs belonged to Smith, even telling the jury in opening statement that he was likely to testify. Key to this argument was his contention that Smith could not be located to be personally called as a witness. To advance this theory of the case, appellant had to testify.

{¶38} Knowing that appellant would ultimately testify, therefore, may have led defense trial counsel to raise the issues of parole status and criminal history directly rather than risk the appearance of hiding it from the jury. In fact, some appellate courts have noted that it may be "customary practice for attorneys to disclose a witness' prior felony convictions on direct," to the extent that doing so is "preferential." See, *Merry*, supra, 2012-Ohio-2910 at ¶ 49, citing *State v. Kachovee,* 4th Dist. Scioto No. 98CA2562, 1999 WL 38994 (Jan. 25, 1999), appeal not allowed, 85 Ohio St.3d 1486, 709 N.E.2d 1214 (1999).

{¶39} It was all but certain from the defense opening statement that appellant would choose to testify. Upon cross-examination, his criminal past would have been admissible pursuant to Evid.R. 609. We therefore ascribe defense trial counsel's decision to raise the topic as trial strategy. Counsel's arguable strategy may have been to admit certain acts to lessen their significance to the jury and to bolster appellant's credibility so that the jury would believe his testimony that the drugs belonged to Smith and not to him.

Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Hobbs*, 10th Dist. Franklin No. 14AP-225, 2015-Ohio-2419, ¶ 24, citing *State v. Fritz,* 163 Ohio App.3d 276, 2005–Ohio–4736, ¶ 18 (2nd Dist.), internal citations omitted.

{¶40} Furthermore, we note the trial court gave a limiting instruction regarding appellant's criminal history. T. 269. We presume the jury followed this instruction. *See State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 23, citing *State v. Garner,* 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995); *Pang v. Minch,* 53 Ohio St.3d 186, 195, 559 N.E.2d 1313 (1990).

{¶41} We therefore find appellant did not receive ineffective assistance of trial counsel and his first assignment of error is overruled.

II.

{¶42} In his second assignment of error, appellant contends the trial court abused its discretion in refusing to order a pre-sentence investigation (P.S.I.) before imposing sentence. We disagree.

{¶43} The decision to order a presentence investigation generally lies within the sound discretion of the trial court if the court contemplates a prison term and not community control in sentencing upon a criminal offense. See, *State v. Adams*, 37 Ohio St.3d 295, 297, 525 N.E.2d 1361 (1988). A trial court's decision in this regard will therefore not be reversed absent an abuse of discretion. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or

arbitrary." *State v. Darmond,* 135 Ohio St.3d 343, 2013–Ohio–966, 986 N.E.2d 971, ¶ 34.

An abuse of discretion is apparent where the trial court's decision does not reveal a

"'sound reasoning process.' " *State v. Morris,* 132 Ohio St.3d 337, 2012–Ohio–2407, 972

N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban*

*Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶44} A P.S.I. is required only when the trial court sentences an offender to a term

of community control.  See, *State v. Amos,* 140 Ohio St.3d 238, 2014-Ohio-3160, ¶ 16

(O'Neill, J. with three Justices concurring in judgment only) ["[a] trial court acts contrary

to law when it imposes a sentence of one or more community-control sanctions on a

felony offender without first ordering and reviewing a presentence investigation report."].

Ohio Crim. R. 32.2 states in pertinent part:

> Unless the defendant and the prosecutor in the case
> agree to waive the presentence investigation report, the court
> shall, in felony cases, order a presentence investigation and
> report **before imposing community control sanctions or**
> **granting probation.** The court may order a presentence
> investigation report notwithstanding the agreement to waive
> the report. * * * *.
>
> (Emphasis added).

{¶45} Appellant cites no authority supporting the underlying theory that the trial

court should have ordered a P.S.I. when appellant was sentenced to a prison term, not

community control.  Community control was not considered.  R.C. 2951.03(A)(2) provides

for the possibility that a felony offender will be sentenced to prison absent preparation of

a P.S.I. [* * * *. "If a defendant is committed to any institution and a presentence investigation report is not prepared * * *, the director of the department of rehabilitation and correction or the director's designee may order that an offender background investigation and report be conducted and prepared regarding the defendant pursuant to section 5120.16 of the Revised Code.* * * *].

{¶46} In the instant case, appellant was convicted of three offenses carrying a presumption of a prison term: two counts of aggravated drug possession pursuant to R.C. 2925.11(A)(C)(1)(b) and one count of aggravated drug trafficking pursuant to R.C. 2925.03(A)(2)(C)(1)(c). Moreover, appellant was on post-release control when he committed the instant offenses. There is no evidence in the record that the trial court considered term of community control at any point, and when appellant requested community control at sentencing, he was flatly denied. T. 291.

{¶47} We find nothing in the record to establish that the trial court's actions were unreasonable, unconscionable, or arbitrary. Under the circumstances of the instant case, the trial court's decision to decline a P.S.I. was not an abuse of discretion.

{¶48} Appellant's second assignment of error is overruled.

III.

{¶49} In his third assignment of error, appellant argues his sentence is not supported by clear and convincing evidence. We disagree.

{¶50} We now review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Cox*, 5th Dist. Licking No. 16-CA-80, 2017-Ohio-5550, ¶ 10, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231, ¶ 22; *State v. Howell*, 5th Dist. Stark No. 2015CA00004, 2015–Ohio–4049, ¶ 31. R.C.

2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *See also, State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.2d 659, ¶ 28. In the instant case, appellant argues broadly that the record does not support imposition of maximum terms.

{¶51} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross*, 161 Ohio St. at 477.

{¶52} A trial court's imposition of a maximum prison term is not contrary to law as long as the court sentences the offender within the statutory range for the offense, and in so doing, considers the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors set forth R.C. 2929.12. *State v. Santos*, 8th Dist. Cuyahoga No. 103964, 2016–Ohio–5845, ¶ 12. Although a trial court must consider the factors in R.C. 2929.11 and 2929.12, there is no requirement that the court state its reasons for imposing a maximum sentence, or for imposing a particular sentence within the statutory range. *Id.* There is no requirement in R.C. 2929.12 that the trial court states on the record that it has considered the statutory criteria concerning

seriousness and recidivism or even discussed them. *State v. Hayes*, 5th Dist. Knox No. 18CA10, 2019-Ohio-1629, ¶ 49, citing *State v. Polick*, 101 Ohio App.3d 428, 431, 655 N.E.3d 820 (4th Dist. 1995). We note, however, that in the instant case, the trial court did reference the statutory factors. T. 293-294.

{¶53} Appellant was charged with one count of aggravated trafficking in drugs (methamphetamine) pursuant to R.C. 2925.11(A)(C)(1)(a) [Count I], a felony of the fifth degree; one count of aggravated trafficking in drugs (methamphetamine) pursuant to R.C. 2925.11(A)(C)(1)(b) [Count II], a felony of the third degree; and one count of aggravated trafficking in drugs (methamphetamine) pursuant to R.C. 2925.11(A)(2)(C)(1)(c) [Count III], a felony of the third degree. Counts II and III merged, and appellee elected to sentence upon Count III. The maximum prison term for a felony of the fifth degree [Count I] is one year. The maximum term for a felony of the third degree [Count III] is 3 years. Pursuant to R.C. 2925.03(A)(2)(C)(1)(c), Count III carries a presumption of a prison term. The trial court imposed a term of 1 year upon Count I and a term of 3 years upon Count III, to run concurrently. The sentences were within the statutory range for felonies of the third and fifth degrees. (Appellant received a total aggregate sentence of 4 years because the trial court also imposed a 1-year term for the violation of post-release control.)

{¶54} At sentencing, the trial court specifically cited factors including appellant's criminal history, his self-serving statements and failure to take responsibility for his actions, and the status of his post-release control. Appellant continued to insist at sentencing that he was "set up" by Smith and bore no responsibility for the drugs in the house.

{¶55} Based on the foregoing, we find the trial court considered the purposes and principles of sentencing [R.C. 2929.11] as well as the factors that the court must consider when determining an appropriate sentence. [R.C. 2929.12]. The trial court has no obligation to state reasons to support its findings, nor is it required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry.

{¶56} While appellant may disagree with the weight given to these factors by the trial judge, appellant's sentence was within the applicable statutory range for a felony of the first degree and therefore, we have no basis for concluding that it is contrary to law.

{¶57} Appellant's third assignment of error is overruled.

## CONCLUSION

{¶58} Appellant's three assignments of error are overruled and the judgment of the Licking County Court of Common Pleas is affirmed.

By: Delaney, J.,

Wise, John, P.J. and

Wise, Earle, J., concur.