[Cite as *State v. Thompson*, 2024-Ohio-2112.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-03-003 |
| | : | O P I N I O N |
| - vs - | | 6/3/2024 |
| | : | |
| CHRISTOPHER J. THOMPSON, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI20210212

Nicholas A. Adkins, Madison County Prosecuting Attorney, and Rachel M. Price, Assistant Prosecuting Attorney, and Michael S. Klamo, Assistant Prosecuting Attorney, for appellee.

Christopher J. Thompson, pro se.

**PIPER, J.**

{¶1} Appellant, Christopher J. Thompson, appeals his convictions for intimidation, OVI, and having weapons under disability after a jury trial in the Madison County Court of Common Pleas. For the reasons discussed below, we affirm Thompson's convictions.

## I. Factual and Procedural Background

{¶2}    Beginning in 2020 and continuing through 2021, Thompson called the Madison County Sheriff's Office at least every other week, sometimes making ten or more calls in a single day.  Each time, Thompson would rant, insult sheriff's office personnel, and demand to speak to the sheriff.  Thompson regularly told the dispatcher that he was coming to the office and would "have [their] badges."  Thompson's rants and threats would later prove to be escalating in nature.

{¶3}    On September 22, 2021, Thompson made an especially vicious series of calls demanding to speak to the sheriff.  The dispatcher informed Thompson that the sheriff was not in the office, but he could leave a message.  Thompson refused to accept this and told the dispatcher "You need to hang up your badges and walk the fuck out of your offices now," and "you're all complicit in crimes against humanity" that are "punishable by death."  Thompson then demanded that the sheriff speak with him by six o'clock, gave the ultimatum "If not, I'm coming," and hung up.  Later that afternoon, Thompson called again, reiterated his demand to speak to the sheriff, and stated "I'll take it to the end and all the way until the last fucking shell is loaded in my gun."  Thompson further threatened the dispatcher, stating "I'm taking the heads off of every fucking one of you" and "I'm coming for your asses."  As a result, the sheriff's office implemented increased security measures and the dispatchers requested to be able to carry firearms.

{¶4}    Later that day, several deputies were patrolling Ohio State University's Farm Science Review exhibition in London, Madison County, Ohio.  As the exhibition closed and attendees were exiting, deputies observed Thompson in the driver's seat of a white panel van, parked near one of the traffic gates.  As Deputy Scott Henry approached, he could see that Thompson appeared to be upset, confused, and yelling incoherently at another deputy.  Deputy Henry asked Thompson why he was there and so upset.

Thompson appeared scattered and aggressively responded with profanities and slurred speech, indicating that he was intoxicated. Thompson then abruptly drove off, narrowly missing Deputy Henry. Deputy Henry immediately pursued the van in his cruiser, activating his lights and siren, but Thompson ignored him. Thompson finally stopped his van at the gate when an oncoming vehicle blocked his path.

{¶5} Around this time, Deputy Henry was advised by dispatch that Thompson had been calling the office threatening to use a gun on law enforcement. Deputy Henry again approached Thompson and asked for his license and registration, but Thompson just responded with more screaming and profanity. Deputy Henry asked Thompson if he had consumed alcohol, to which Thompson replied he was "allowed to drink alcohol and smoke marijuana in this bitch." As Deputy Henry came into close contact with Thompson to detain him, he could smell a strong odor of an alcoholic beverage.

{¶6} Sergeant Jacob Gibson then arrived on the scene and observed that Thompson's eyes appeared glassy. Sergeant Gibson searched Thompson's van and found a loaded Colt 1911 handgun sitting on the center console. Deputy Kyle Kaufman transported Thompson to jail and observed that Thompson was unsteady on his feet, smelled of alcoholic beverage, had glassy and bloodshot eyes, and slurred his speech. Deputy Kaufman asked Thompson to take a field sobriety test at the jail, but he refused.

{¶7} On October 20, 2022, Thompson was brought to trial on four counts: intimidation, a felony of the third degree in violation of R.C. 2921.03(A); operating a motor vehicle while under the influence of alcohol, a felony of the fourth degree in violation of R.C. 4511.19(A)(1)(a), with a firearm specification; having weapons under disability, a felony of the third degree in violation of R.C. 2923.13(A)(2); and improperly handling firearms in a motor vehicle, a felony of the fourth degree in violation of R.C. 2923.16(B). Thompson's attorney stipulated that Thompson had three prior OVI convictions and one

prior violent felony conviction. At trial, the state presented testimony from Deputy Henry, dispatcher Allison Haskins, Sergeant Gibson, dispatcher Mitchell Henson, and Deputy Kyle Kauffman. Thompson testified on his own behalf and asserted that he is a "sovereign citizen," and that the authority of the sheriff's department and judicial system is invalid.

{¶8} The jury found Thompson guilty on all four counts. The state stipulated that Thompson's convictions for improper handling and having weapons under disability merged for purposes of sentencing and elected to proceed with sentencing for having weapons under disability. Thompson was sentenced to 24 months in prison for intimidation, 24 months in prison for OVI with an additional 12 months in prison for the firearm specification, and 24 months in prison for having weapons under disability. Each of these terms were ordered to be served consecutively for an aggregate sentence of seven years.

{¶9} Thompson now appeals his convictions, raising six assignments of error for our review.

**II. Legal Analysis**

{¶10} Assignment of Error No. 1:

TRIAL COURT FAILED TO PROVE THAT THE APPELLANT HAD SOME SUBJECTIVE UNDERSTANDING OF THE THREATENING NATURE OF HIS STATEMENTS TO THE DISPATCHER OF MADISON COUNTY SHERIFF'S DEPT. [sic][1]

{¶11} In his first assignment of error, Thompson argues that his conviction for intimidation was not supported by sufficient evidence or by the manifest weight of the evidence. Thompson asserts that the state failed to prove he subjectively understood his statements to the dispatchers to be threatening. Thompson further argues that his words

---

1. Beyond the wording itself, we note that a trial court bears no burden of proof at a jury trial. Nevertheless, we will attempt to address Thompson's arguments.

were misinterpreted and he "wasn't trying to pester or make anyone upset." We disagree with Thompson's suggestion of what the evidence demonstrates.

*Standard of Review*

**{¶12}** When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Intihar*, 12th Dist. Warren No. CA2015-05-046, 2015-Ohio-5507, ¶ 9. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In other words, "the test for sufficiency requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33. When evaluating the sufficiency of the evidence, this court must "defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132.

**{¶13}** On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the

conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio- 818, ¶ 43.

{¶14} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Nevertheless, although the two concepts are different, a finding that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19. Therefore, "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43.

### *Unlawful Threat of Harm*

{¶15} R.C. 2921.03(A) provides, "No person, knowingly and by force, [or] by unlawful threat of harm to any person or property * * * shall attempt to influence, intimidate, or hinder a public servant * * * in the discharge of the person's duty." R.C. 2901.22(B) instructs that "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist."

{¶16} Here, the recording of Thompson's calls to the sheriff's office, as well as the testimony of dispatchers Haskins and Henson, established that Thompson attempted to intimidate the dispatchers into abandoning their duties. Thompson told the dispatchers

"You need to hang up your badges and walk the fuck out of your offices now," and "you're all complicit in crimes against humanity" that are "punishable by death." Thompson then gave an ultimatum that the sheriff needed to speak with him by six o'clock, and threatened "If not, I'm coming." As the Supreme Court of Ohio has noted, "[t]he most intimidating threat of all may be an indefinite one." *State v. Cress*, 112 Ohio St.3d 72, 2006-Ohio-6501, ¶ 37 (giving the example "You'll be sorry" as an indefinite threat). However, Thompson called the dispatcher again to provide greater detail to his threats, stating "I'll take it to the end and all the way until the last fucking shell is loaded in my gun," as well as "I'm taking the heads off of every fucking one of you," and "I'm coming for your asses." Thompson's multiple phone calls contained specific threats that were clearly intended to intimidate the dispatchers into abandoning their duties. *See State v. Eisele*, 9th Dist. Medina No. 13CA0044-M, 2014-Ohio-873, ¶ 21 (holding that defendant's conviction for intimidation was supported by the manifest weight of the evidence where defendant placed multiple calls to police dispatchers containing specific threats of harm). The jury did not clearly lose its way in weighing this evidence against Thompson's testimony that he "just wanted to talk to the sheriff."

{¶17} Thompson's first assignment of error is overruled.

{¶18} Assignment of Error No. 2:

TRIAL COURT FAILED TO PROVE THAT THE APPELLANT
WAS UNDER THE INFLUENCE/IMPAIRED. [sic]

{¶19} In his second assignment of error, Thompson argues that his OVI conviction was against the manifest weight of the evidence because no field sobriety test was administered.

{¶20} "R.C. 4511.19(A)(1), prohibits the operation of a motor vehicle if the person is under the influence of alcohol or drugs of abuse. This subsection does not require the

introduction of any results of chemical testing to meet the elements of the offense." *State v. Egbert*, 12th Dist. Butler No. CA2004-12-304, 2006-Ohio-744, ¶ 18. For prosecutions of R.C. 4511.19(A)(1)(a), "the amount of alcohol found as a result of the chemical testing of bodily substances is only of secondary interest. The defendant's ability to perceive, make judgments, coordinate movements, and safely operate a vehicle is at issue in the prosecution of a defendant under such section." (Citation omitted.) *Newark v. Lucas*, 40 Ohio St.3d 100, 104 (1988).

{¶21} Here, three deputies testified that Thompson smelled of an alcoholic beverage, had slurred speech, and was belligerent, glassy eyed, and unsteady on his feet. When Deputy Henry first attempted to speak with Thompson, he abruptly drove away and nearly hit Deputy Henry. When Deputy Henry later caught up to Thompson's van and asked if he had been drinking, Thompson expressed a belief that he was "allowed to drink alcohol and smoke marijuana in this bitch." Thompson clearly displayed visible signs of impairment. No field sobriety test was administered simply because Thompson refused. However, there was overwhelming evidence demonstrating Thompson was overly intoxicated and impaired when operating the van. The jury did not clearly lose its way in finding Thompson operated his van under the influence of drugs or alcohol.

{¶22} Thompson's second assignment of error is overruled.

{¶23} Assignment of Error No. 3:

TRIAL COURT ABUSED ITS DISCRETION DURING SENTENCING. [sic]

{¶24} In his third assignment of error, Thompson argues that the trial court abused its discretion during sentencing. Thompson asserts that he did not waive the preparation of a presentence-investigative report and the trial court improperly considered prior offenses that he alleges were dismissed. However, in his brief, Thompson does not

develop his argument as to which of his prior offenses were invalid.

**{¶25}** App.R. 16(A)(7) requires an appellate brief to include reasons in support of an assignment of error with citations to authorities, statutes, and parts of the record relied upon. If a party fails to identify the error in the record upon which the assignment is based or argue an assignment as required by App.R. 16(A), an appellate court may disregard the assignment of error. App.R. 12(A)(2). An appellant bears the burden of affirmatively demonstrating error on appeal and substantiating his or her arguments in support thereof. *Ostigny v. Brubaker*, 12th Dist. Warren No. CA2023-03-026, 2024-Ohio-384, ¶ 38. It is not an appellate court's duty to "root out" or develop an argument that can support an assigned error, even if one exists. *Lebanon v. Ballinger*, 12th Dist. Warren No. CA2014-08-107, 2015-Ohio-3522, ¶ 27. Nor is it the duty of an appellate court to search the record for evidence to support an appellant's argument as to alleged error. *Hellmuth v. Stephens*, 12th Dist. Butler No. CA2022-04-034, 2023-Ohio-4592, ¶ 23.

**{¶26}** Regardless, there is no indication that Thompson's prior criminal history was inaccurate, and we disagree with Thompson's assertions.

### *Lack of Necessity for PSI Report*

**{¶27}** "The decision to order a presentence investigation generally lies within the sound discretion of the trial court if the court contemplates a prison term and not community control in sentencing upon a criminal offense." *State v. McCauley*, 5th Dist. Licking No. 19-CA-84, 2020-Ohio-2813, ¶ 43. Here, the trial court determined that the firearms specification dictated mandatory prison time, therefore community control sanctions were unavailable and a PSI report was not necessary. *See* R.C. 2951.03(A)(1). After making this determination, the trial court asked Thompson's attorney if there was any reason not to proceed to sentencing and he raised no objections. The trial court did not err by not ordering a PSI report prior to sentencing.

*Consecutive Sentencing*

**{¶28}** A consecutive sentence is contrary to law where the trial court fails to make the consecutive sentencing findings required by R.C. 2929.14(C)(4). *State v. Jones*, 12th Dist. Butler No. CA2019-05-087, 2020-Ohio-149, ¶ 10-14. Pursuant to R.C. 2929.14(C)(4), a trial court must engage in a three-step analysis and make certain findings before imposing consecutive sentences. *State v. Smith*, 12th Dist. Clermont No. CA2014-07-054, 2015-Ohio-1093, ¶ 7. Specifically, the trial court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

**{¶29}** At sentencing, the trial court specifically found that consecutive sentences were necessary to protect the public and punish Thompson. Additionally, the trial court found that consecutive sentences were not disproportionate to the seriousness of Thompson's conduct, especially where Thompson had instilled fear and caused

psychological harm to the dispatchers. Finally, the trial court recognized that Thompson had five prior OVIs, a pending felony OVI, and at least four prior other felonies. The trial court found that Thompson had not responded favorably to previous sanctions and his prior criminal history indicated a high risk of recidivism, therefore consecutive sentences were necessary to protect the public from future crime. The trial court's findings satisfied the requirements of R.C. 2929.14(C)(4) and it did not abuse its discretion in imposing consecutive sentences.

{¶30} Thompson's third assignment of error is overruled.

{¶31} Assignment of Error No. 4:

> TRIAL COURT ERRED IN SENTENCING APPELLANT CONSECUTIVELY IN ALL 4 CHARGES, 3 OF WHICH, CONTAINING FIREARM SPECIFICATIONS "ALLIED OFFENSES." [sic]

{¶32} In his fourth assignment of error, Thompson argues that each of his four offenses were allied offenses, and the trial court could not impose consecutive prison terms. We disagree.

{¶33} R.C. 2941.25 prohibits the imposition of multiple punishments for the same criminal conduct, and provides that:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

As the Supreme Court of Ohio explained, "If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses:

(1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 25.

**{¶34}** Here, Thompson's intimidation offense occurred separately from his other offenses, with the separate harm of threatening the dispatchers in the sheriff's office, and therefore does not merge. Thompson's improper handling and weapons under disability offenses merged, and the State elected to sentence Thompson for weapons under disability only. Thompson's OVI offense had the separate harm of Thompson operating a vehicle while under the influence of alcohol. Although Thompson had a weapon specification attached to his OVI offense, it does not transform the OVI offense into an allied offense with his improper handling and weapons under disability offenses. Further, it is well established that firearm specifications are penalty enhancements, not offenses, therefore firearms specifications are not subject to merger with other offenses merely because they each involve the use of the same firearm. *State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, ¶ 19. Therefore, neither the OVI offense nor its attached firearm specification merge with the weapons under disability offense.

**{¶35}** Thompson's fourth assignment of error is overruled.

**{¶36}** Assignment of Error No. 5:

> TRIAL COURT FAILED IN PROVING THAT APPELLANT WAS/IS A MENTAL DEFECTIVE AS JUDGE COSTELLO ENTERED A PLEA OF NOT GUILTY BY REASON INSANITY, BY ATTORNEY S. FOX ON 2/7/2022. [sic]

**{¶37}** In his fifth assignment of error, Thompson argues that he was improperly found competent to stand trial. We disagree.

**{¶38}** Due process and fundamental fairness demand that a criminal defendant

who is not competent to stand trial not be tried and convicted of an offense. *State v. Murphy*, 173 Ohio App.3d 221, 227, 2007-Ohio-4535, ¶ 28 (12th Dist.), citing *State v. Braden*, 98 Ohio St.3d 354, 2003-Ohio-1325, ¶114. However, a criminal defendant is presumed to be competent to stand trial, R.C. 2945.37(G), and therefore a defendant who claims he is not competent has the burden of proving that fact by a preponderance of the evidence. *State v. Stanley*, 121 Ohio App.3d 673, 685 (1st Dist. 1997), citing *State v. Williams*, 23 Ohio St.3d 16, 19 (1986); *see also*, *Medina v. California*, 505 U.S. 437 (1992) (a state does not violate due process by presuming a defendant is competent to stand trial and placing the burden on him to prove his incompetence by a preponderance of evidence). If, after holding a competency hearing, the trial court finds by a preponderance of the evidence that, because of the defendant's present mental condition, he is incapable of understanding the nature and objective of the proceedings against him or of assisting in his own defense, the court must find the defendant incompetent to stand trial. R.C. 2945.37(G).

**{¶39}** An appellate court will not disturb a competency determination if there was some reliable, credible evidence supporting the trial court's conclusion that the defendant understood the nature and objective of the proceedings against him. *State v. Bullocks*, 12th Dist. Warren No. CA2010-01-008, 2010-Ohio-2705, ¶ 7, citing *Williams* at 19. The adequacy of the data relied upon by the expert who examined the defendant is a question for the trier of fact. *Bullocks* at ¶ 7, citing *State v. Neely*, 12th Dist. Madison No. CA2002-02-002, 2002-Ohio-7146, ¶ 10. "A defendant's failure to cooperate with [a psychological examination] does not constitute sufficient indicia of incompetence to raise doubt about a defendant's competence to stand trial." *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, ¶ 46.

**{¶40}** Here, Thompson's attorney filed a motion to have Thompson evaluated for

competency and the trial court granted the motion. However, Thompson refused to cooperate in the evaluation, and the resulting report was of limited value. On July 15, 2022, the trial court held a competency hearing and heard additional arguments from the parties. The report was stipulated into evidence. At the close of the evidentiary hearing, the trial court found that although Thompson subscribed to the highly unorthodox and illogical "sovereign citizen" legal theory, he was lucid and understood the issues being raised by the court, even if he had no faith in the validity of the proceedings. As the trial court recognized, and as the psychological examiner pointed out, Thompson is not alone in his "sovereign citizen" beliefs, and his conduct in the legal proceedings has been driven by ideology rather than mental defect. The trial court determined Thompson was capable of understanding the nature and objective of the proceedings against him and assisting in his own defense. Therefore, the trial court properly found that Thompson was competent to stand trial.

**{¶41}** Thompson's fifth assignment of error is overruled.

**{¶42}** Assignment of Error No. 6:

TRIAL COURT FAILED TO PROVE THAT APPELLANT KNEW HE POSSESSED A FIREARM AND THAT APPELLANT KNEW, HE BELONGED TO THE RELEVANT CATEGORY OF 'PERSON' BARRED FROM POSSESSING A FIREARM. [sic]

**{¶43}** In his sixth assignment of error, Thompson argues that the state failed to prove he possessed a firearm for purposes of his weapons under disability conviction. Thompson also argues that he is not a "person" subject to the statute. We disagree.

*Possession of the Firearm*

**{¶44}** To "have" a firearm within the meaning of R.C. 2923.13(A), "a person must have actual or constructive possession of the firearm." *State v. Brown*, 12th Dist. Butler No. CA2013-03-043, 2014-Ohio-1317, ¶ 16, citing *State v. Leide*, 12th Dist. Butler No.

CA2005-08-363, 2006-Ohio-2716, ¶ 29. Ownership of the weapon, however, "need not be proven to establish constructive possession." *State v. Brooks*, 9th Dist. Summit No. 23236, 2007-Ohio-506, ¶ 23. Rather, "[a]n accused has 'constructive possession' of an item when the accused is conscious of the item's presence and is able to exercise dominion and control over it, even if the item is not within the accused's immediate physical possession." *State v. Jester*, 12th Dist. Butler No. CA2010-10-264, 2012-Ohio-544, ¶ 25. "Dominion and control can be proven by circumstantial evidence alone." *State v. Brown*, 12th Dist. Butler No. CA2006-10-247, 2007-Ohio-7070, ¶ 43.

**{¶45}** Here, immediately after Thompson was apprehended from his van, Sergeant Gibson found a loaded Colt 1911 handgun sitting in the open on the center console. When Thompson was driving his van, he had dominion and control of the handgun. Although it was not necessary for the state to prove actual ownership, during the pendency of the case Thompson personally filed a letter with the court (which was read into the record at trial) requesting the return of his property that was seized from the van. In the letter, Thompson specifically requested that his "Colt Mark IV Government Model 1911 automatic pistol" be returned—the exact model that was seized. The evidence clearly demonstrated that Thompson had possession of the firearm.

*Sovereign Citizen Arguments*

**{¶46}** In his brief, Thompson goes on to argue that he is "an American State National, an alien, nonresident of D.C." and not a "person" and therefore is not subject to the laws or courts of Ohio. These "sovereign citizen" legal theories have no basis in law and such arguments have been "soundly rejected by every court that has been given the opportunity to do so." *See, e.g.*, *State v. Miller*, 12th Dist. Clermont No. CA2018-04-019, 2018-Ohio-4258, ¶ 28. "Our whole system of law is predicated on the general, fundamental principle of equality of application of the law. 'All men are equal before the

law,' 'This is a government of laws and not of men,' 'No man is above the law,' are all maxims showing the spirit in which legislatures, executives and courts are expected to make, execute and apply laws." *Truax v. Corrigan*, 257 U.S. 312, 332 (1921). We take this present opportunity to reject Thompson's "sovereign citizen" arguments as meritless.

**{¶47}** Thompson's sixth assignment of error is overruled.

### III. Conclusion

**{¶48}** In light of the foregoing, we conclude that each of Thompson's convictions were supported by sufficient evidence and by the manifest weight of the evidence, the trial court did not err in imposing consecutive sentences, and the trial court did not err in finding Thompson competent to stand trial. Additionally, we reject Thompson's "sovereign citizen" arguments that he is not subject to the laws of Ohio and that these laws cannot be administered by Ohio's judiciary. Each of Thompson's six assignments of error are overruled.

**{¶49}** Judgment affirmed.

S. POWELL, P.J., and BYRNE, J., concur.