[Cite as *American Express Natl. Bank v. Jenkins*, 2026-Ohio-774.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| AMERICAN EXPRESS NATIONAL BANK, | : | CASE NO. CA2025-08-083 |
| Appellee, | : | OPINION AND |
| | : | JUDGMENT ENTRY |
| vs. | | 3/9/2026 |
| | : | |
| ELYSE JENKINS, et al., | : | |
| Appellants. | : | |
| | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2024-10-2111

Thomas M. Glennon, for appellee.

Elyse Jenkins, individually and on behalf of Selebrian Enterprises, LLC, pro se.

**O P I N I O N**

**M. POWELL, J.**

{¶ 1} Elyse Jenkins appeals from a decision of the Butler County Court of Common Pleas that denied her Civ.R. 60(B) motion for relief from judgment. Finding no error, we affirm.

## I. Factual and Procedural Background

{¶ 2}   This case begins with a credit card and unpaid balances. It arrives at this court with a complicated procedural history.

### A. The Underlying Credit Relationship

{¶ 3}   American Express extended credit to Jenkins and Selebrian Enterprises, LLC through a business credit card account. The parties do not dispute the existence of this credit relationship. Jenkins admitted that she received a credit card and used it. Account statements reflect charges, payments, and ultimately a default. American Express alleges, and the record supports, that Jenkins and Selebrian were jointly and severally liable under the terms of the Cardmember Agreement for any balance due on the account. When Jenkins and Selebrian stopped making payments, an outstanding balance of $15,667.28 remained.

### B. Commencement of Suit and Initial Proceedings

{¶ 4}   On October 22, 2024, American Express filed a breach-of-contract complaint in the Butler County Court of Common Pleas against Jenkins and Selebrian, seeking recovery of the outstanding balance plus interest and costs. The complaint alleged that American Express had extended credit to the defendants, that the defendants had accepted and used the credit card, that the defendants had defaulted by failing to pay the balance due under the terms of the Cardmember Agreement, and that American Express had suffered damages in the amount of the unpaid balance. A copy of the Cardmember Agreement was attached to the complaint.

{¶ 5}   Jenkins responded pro se with a flurry of filings. She filed a notice of special appearance, a notice of intervention, a demand for dismissal, a demand for a bill of particulars, and a demand for abatement. These filings challenged the suit on various grounds, including defect of process, failure to send a written notice, lack of standing, lack

of jurisdiction, and improper venue. They did not include an answer to the complaint.

{¶ 6} American Express responded to Jenkins's demand for dismissal, and on December 20, 2024, the trial court denied the demand for dismissal. The court also observed that Jenkins had been filing papers on behalf of Selebrian and admonished her that doing so constituted the unauthorized practice of law. As the court explained, Jenkins, a nonlawyer, had no authority to represent a limited liability company in litigation, and any such filings would not be considered.

{¶ 7} Throughout the proceedings, Jenkins styled herself with unusual nomenclature. She described herself as "Elyse: of the Prescott family," appearing "solely by special appearance in private, non-commercial capacity as beneficiary and authorized representative for the equitable estate," and invoking "UCC 1-308" to reserve "all rights." She contended that the complaint targeted an "equitable estate" rather than her as a natural person.

### C. Default Judgment Against Selebrian

{¶ 8} Selebrian filed no responsive pleading. On February 14, 2025, American Express moved for default judgment against the company, attaching supporting affidavits. On March 25, 2025, the trial court granted the motion and entered default judgment against Selebrian for the full amount of the debt. Jenkins, who has no legal authority to appeal on behalf of the LLC, nevertheless challenges this judgment in her appellate briefing. We note the challenge but observe that it is not properly before us.

### D. Summary-Judgment Proceedings

{¶ 9} With Selebrian out of the case, American Express turned to Jenkins. On April 14, 2025, American Express filed a motion for summary judgment against her. The motion attached several exhibits, including a copy of the Cardmember Agreement; account statements showing usage, payments, and the outstanding balance; and an

affidavit from American Express stating that it was the original creditor and that the account had not been sold or assigned.

{¶ 10} Jenkins did not respond to the summary-judgment motion. She filed no memorandum in opposition, no counter-affidavits, no Civ.R. 56(F) motion for additional discovery. She simply did not participate.

{¶ 11} On May 19, 2025, the trial court granted American Express's motion and entered judgment in its favor and against Jenkins for $15,667.28 plus interest and costs. Jenkins did not directly appeal the judgment.

### E. Postjudgment Filings and the Civ.R. 60(B) Motion

{¶ 12} Instead of appealing, Jenkins filed several postjudgment motions. On June 2, 2025, she filed a motion for relief from judgment under Civ.R. 60(B). In this motion, Jenkins argued that American Express lacked standing to bring suit because no signed agreement was attached to the original complaint, that the governing law was Utah rather than Ohio, and that American Express had failed to establish ownership of the debt.

{¶ 13} Between June 13 and July 8, 2025, Jenkins filed several additional documents, including a notice of filing supplemental counterclaim with damages on June 13, 2025; a notice of rebuttal to American Express's opposition and conditional demand to vacate void judgment and garnishment due to lack of standing and jurisdiction on June 26, 2025; a notice of special motion to vacate void judgment for lack of standing and subject-matter jurisdiction on June 27, 2025; a notice of clarification and affirmation of supplemental counterclaim and demand for damages on July 7, 2025; and numerous other filings. Several of these attempted to inject new counterclaims into the case, asserting violations of the Fair Debt Collection Practices Act ("FDCPA"), the Truth in Lending Act ("TILA"), and the tender-discharge provisions of the Uniform Commercial Code ("UCC").

**F. Garnishment Proceedings**

{¶ 14} Meanwhile, American Express moved to enforce its judgment. On May 27, 2025, it filed garnishment affidavits seeking to attach bank accounts held by Jenkins at two banks. An objection hearing was scheduled for June 17, 2025.

{¶ 15} Jenkins filed objections to the garnishment and various related notices in the days leading up to the hearing. The hearing took place before a magistrate on June 17, 2025. The magistrate ordered the garnishment to stand.

{¶ 16} After the hearing, both garnishee banks reported that no funds were available for garnishment. On July 11, 2025, the trial court entered an order finding that, because no funds had been recovered, all motions regarding the garnishment order or hearing were moot.

**G. The Civ.R. 60(B) Order**

{¶ 17} On July 10, 2025, the trial court issued a Decision and Entry addressing Jenkins's Civ.R. 60(B) motion and her postjudgment counterclaim filings. The court denied the motion for relief from judgment, finding that Jenkins had failed to demonstrate entitlement to relief under any of the grounds enumerated in Civ.R. 60(B)(1) through (5). The court observed that Jenkins's arguments regarding American Express's standing and proof of ownership were matters she could have raised in response to the summary-judgment motion but chose not to. The court noted that a Civ.R. 60(B) motion cannot substitute for a direct appeal.

{¶ 18} With respect to Jenkins's counterclaims, the court struck them from the record. The court explained that a final, appealable order had been entered granting judgment to American Express, and that "[t]he filing of counterclaims at this point is not permitted by the rules of civil procedure."

{¶ 19} Jenkins appealed.

## II. Analysis

{¶ 20} Jenkins, in her pro se brief, raises seven assignments of error, challenging the trial court's rulings on standing, service, the garnishment hearing, summary judgment, the stricken counterclaims, recordkeeping irregularities, and alleged statutory violations.

### A. Jurisdictional Analysis

{¶ 21} Before we address the merits of Jenkins's assignments of error, we must first determine what matters are properly before us.

### 1. The Final, Appealable Order and Timeliness

{¶ 22} Jenkins filed her notice of appeal on August 1, 2025. At that point, multiple orders had been entered in the trial court, including default judgment against Selebrian on March 25, 2025; summary judgment against Jenkins on May 19, 2025; the July 11, 2025 order following the garnishment hearing; and the July 10, 2025 Decision and Entry denying Jenkins's Civ.R. 60(B) motion and striking her postjudgment counterclaims. The question is which of these may be reviewed on appeal.

{¶ 23} App.R. 4(A)(1) is unambiguous: "a party who wishes to appeal from an order that is final upon its entry shall file the notice of appeal required by App.R. 3 within 30 days of that entry." This 30-day window is jurisdictional. And it applies with equal force to sophisticated litigants and pro se parties alike.

{¶ 24} The summary judgment entered on May 19, 2025, was a final appealable order. It resolved all claims against Jenkins and entitled American Express to enforce its judgment. Jenkins did not timely appeal that order. Instead, she filed multiple motions for relief from judgment in the trial court and did not file her notice of appeal until August 1, 2025, more than 70 days after entry of the summary judgment.

{¶ 25} This appeal, therefore, is untimely insofar as it seeks direct review of the summary judgment. The filing of a Civ.R. 60(B) motion does not toll or extend the time for

filing a direct appeal. *See Bank of Am., N.A. v. Kuchta*, 2014-Ohio-4275, ¶ 16. Jenkins's failure to file a timely notice of appeal from the summary judgment forecloses direct appellate review of that order.

{¶ 26} The July 11, 2025 order is not final and appealable. Under R.C. 2505.02(B)(1) and (2), an order is final and appealable only if it affects a "substantial right," defined as one "that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect," R.C. 2505.02(A)(1). The June 17, 2025 hearing concerned postjudgment garnishment proceedings in which American Express sought to attach Jenkins's bank accounts. Both garnishees answered that no funds were available. The trial court's July 11, 2025 order expressly found that "there are no funds for the Court to release to Plaintiff or refund to Defendant" and denied all garnishment-related motions as moot.

{¶ 27} An order that produces no practical effect on the parties does not affect a substantial right. No funds were garnished. No property was taken. No enforcement action succeeded. The procedural complaints Jenkins raises about what transpired at the hearing are untethered to any cognizable harm. Without an order affecting a substantial right, there is nothing for this court to review.

{¶ 28} What remains, then, is the July 10, 2025 Decision and Entry denying Jenkins's Civ.R. 60(B) motion for relief from judgment. That order is a final, appealable order under R.C. 2505.02(B)(2), as it affects a substantial right made on a summary application in an action after judgment. Jenkins timely appealed the order. Accordingly, it is the denial of Jenkins's Civ.R. 60(B) motion that is before us for review.

**2. The Scope of Review on Appeal from a Civ.R. 60(B) Denial**

{¶ 29} Because the only order timely appealed is the July 10, 2025 denial of Jenkins's Civ.R. 60(B) motion, the scope of our review is correspondingly limited. We do

not sit as a court of direct appeal from the summary judgment. We review only whether the trial court abused its discretion in denying relief from that judgment under Civ.R. 60(B). The standard is well established. A trial court's decision on a Civ.R. 60(B) motion is reviewed for abuse of discretion. *Griffey v. Rajan*, 33 Ohio St.3d 75, 77 (1987).

{¶ 30} To prevail on a Civ.R. 60(B) motion, the moving party must demonstrate three things: "(1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." *GTE Automatic Electric, Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 (1976), paragraph two of the syllabus. All three requirements must be satisfied, and failure on any one is fatal to the motion. *See Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20 (1988).

{¶ 31} Critically, Civ.R. 60(B) "may not be used as a substitute for a [timely] appeal." *Doe v. Trumbull Cty. Children Servs. Bd.*, 28 Ohio St.3d 128, 131 (1986). A party may not use a motion for relief from judgment to raise arguments that could and should have been raised in a timely appeal. *See Kuchta*, 2014-Ohio-4275, at ¶ 16. This principle applies with particular force where, as here, the movant's arguments go to the merits of the underlying dispute rather than to circumstances that arose after judgment or that prevented the movant from participating in the original proceedings.

{¶ 32} In sum, the present appeal is timely only as to the July 10, 2025 Decision and Entry denying Jenkins's Civ.R. 60(B) motion and striking her postjudgment counterclaims. Accordingly, our review of Jenkins's substantive claims is limited to whether the trial court abused its discretion in denying Civ.R. 60(B) relief.

## B. The "Sovereign Citizen" Themes in Jenkins's Briefs

{¶ 33} One more preliminary matter: Jenkins's briefs echo themes associated with "sovereign citizen" legal theories. Although she denies that she is asserting a sovereign-citizen defense, the substance is there. She characterizes herself as appearing "solely by special appearance in private, non-commercial capacity as beneficiary and authorized representative for the equitable estate," purports to reserve "all rights" under "UCC 1-308," styles herself "Elyse: of the Prescott family," and suggests the complaint targeted an "equitable estate" rather than a natural person.

{¶ 34} These legal theories have no basis in law. Courts have uniformly rejected sovereign-citizen arguments as frivolous. *See, e.g.*, *SoFi Lending Corp. v. Williams*, 2024-Ohio-1166, ¶ 21 (8th Dist.); *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011). We have done the same. *State v. Thompson*, 2024-Ohio-2112, ¶ 46 (12th Dist.); *In re A.V.*, 2022-Ohio-4719, ¶ 18, fn. 6 (12th Dist.). Sovereign-citizen arguments affect neither standing, jurisdiction, nor any other aspect of this case.

{¶ 35} Also, the UCC provision Jenkins invokes, R.C. 1301.308, merely allows a party to perform a contract under protest without waiving rights. It does not exempt individuals from legal obligations or transform them into separate juridical entities. The distinction Jenkins draws between her "private capacity" and some other capacity is legally meaningless. She is a natural person who allegedly entered into a credit card agreement with American Express and incurred a balance. She may be sued in her own name, and judgment may be entered against her in that name.

{¶ 36} We turn now to the assignments of error.

## C. American Express's Standing

{¶ 37} The first assignment of error alleges:

{¶ 38} PLAINTIFF LACKED STANDING, RENDERING ALL JUDGMENTS

VOID AB INITIO.

{¶ 39} Jenkins's first assignment of error argues that the trial court erred in denying relief from judgment because American Express lacked standing at the time it filed suit, rendering all subsequent judgments void.

### 1. Standing Cannot Be Challenged Through Civ.R. 60(B)

{¶ 40} The standing doctrine ensures that courts resolve genuine controversies between parties with a real stake in the litigation's outcome. As the Ohio Supreme Court explained, standing is a jurisdictional requirement in the sense that "'a party lacks standing to invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the subject matter of the action.'" (Emphasis removed.) *Fed. Home Loan Mortgage Corp. v. Schwartzwald*, 2012-Ohio-5017, ¶ 22, quoting *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas*, 35 Ohio St.2d 176, 179 (1973). Standing must exist at the time the complaint is filed and cannot be cured by post-filing events. *Id.* at ¶ 24-26.

{¶ 41} In the present case, even assuming a standing deficiency, *Kuchta* forecloses relief. The Ohio Supreme Court held that "lack of standing cannot support a motion for relief from judgment," and it "does not render a judgment void for lack of subject-matter jurisdiction." *Kuchta*, 2014-Ohio-4275, at ¶ 25. Common pleas courts possess subject-matter jurisdiction over civil actions. A particular plaintiff's standing speaks only to whether that plaintiff may invoke the court's jurisdiction in a specific case, not whether the court has fundamental authority to decide civil controversies. *Id.* at ¶ 22-23.

{¶ 42} Because standing is "cognizable on appeal," the Court explained, "it cannot be used to collaterally attack a judgment." *Id.* at ¶ 25. Civ.R. 60(B) is not a substitute for a timely direct appeal. *Id.* at ¶ 16. Jenkins's remedy was to appeal from the May 19, 2025

summary judgment. Having failed to do so, she cannot repackage her standing argument as a claim of voidness.

{¶ 43} Jenkins invokes *Patton v. Diemer*, 35 Ohio St.3d 68 (1988), for the proposition that void judgments may be attacked at any time. But *Kuchta* clarifies that a standing deficiency does not render a judgment void in this sense. The trial court retains subject-matter jurisdiction. Any error goes to the particular plaintiff's ability to invoke it. That is a defect cognizable on direct appeal, not through collateral attack. *Patton*'s principle applies to defects in subject-matter jurisdiction, which *Kuchta* definitively clarified does not include standing deficiencies, *Kuchta* at ¶ 19-23. Common pleas courts have subject-matter jurisdiction over civil actions regardless of whether a particular plaintiff has standing. Standing goes to jurisdiction over the particular case, making any resulting error voidable, not void. *Kuchta* at ¶ 19.

**2. American Express Had Standing**

{¶ 44} Even if there were no procedural bar, we would conclude that American Express had standing. Jenkins relies heavily on *Schwartzwald*, but that case is inapposite. In *Schwartzwald*, the plaintiff was an assignee attempting to enforce a mortgage it did not own when the complaint was filed. The Court said that standing must exist at filing and cannot be cured by post-filing events. Here, American Express is the original creditor. It extended credit to Jenkins, Jenkins used that credit, and Jenkins defaulted. American Express suffered an injury at the moment of default and has a personal stake in the litigation's outcome. That is standing.

{¶ 45} Jenkins's insistence that a signed agreement must accompany the complaint misreads Ohio law. Courts have consistently held that "credit card agreements are contracts whereby the issuance and use of a credit card creates a legally binding agreement." *Asset Acceptance LLC v. Davis*, 2004-Ohio-6967, ¶ 48 (5th Dist.); *Discover*

*Bank v. Poling*, 2005-Ohio-1543, ¶ 17 (10th Dist.). By using the card, the cardholder accepts the agreement's terms. No signature is required. *Poling* at ¶ 17.

{¶ 46} American Express attached the Cardmember Agreement to its complaint, submitted account statements reflecting usage and default, and provided an affidavit establishing that it is the original creditor and never assigned the account. These materials demonstrate standing at filing. Jenkins conflates proof of the underlying claim with proof of standing. They are distinct inquiries. Standing asks whether the plaintiff has alleged an injury giving it a stake in the outcome; the merits ask whether the plaintiff can prove its case. American Express satisfied the former.

{¶ 47} American Express, as the original creditor, had standing at the commencement of suit. And even if its proof were somehow deficient, Civ.R. 60(B) may not be used to challenge that deficiency.

{¶ 48} The first assignment of error is overruled.

### D. Service of the Summary-Judgment Motion

{¶ 49} The second assignment of error alleges:

> APPELLANT WAS DENIED DUE PROCESS BY LACK OF
> SERVICE OF DISPOSITIVE MOTION.

{¶ 50} Jenkins's second assignment of error contends that she was denied due process because American Express failed to serve its motion for summary judgment on her. Jenkins's argument here fails because she never raised it in the Civ.R. 60(B) motion that is before us.

{¶ 51} Jenkins filed her first Civ.R. 60(B) motion on June 2, 2025, seeking relief from the May 19, 2025 summary judgment. That motion advanced numerous arguments but said nothing about service. Jenkins filed a second motion on June 26, 2025, again omitting any service challenge. She filed a third on July 8, 2025, still without mentioning

the issue. Only on July 14, 2025, after the trial court had denied her prior motions, did Jenkins first claim she never received the summary-judgment motion.

{¶ 52} Civ.R. 60(B) cannot be used to relitigate issues that could have been raised on appeal or in a prior motion. *Kuchta*, 2014-Ohio-4275, at ¶ 15-16. If Jenkins believed she had not received service of the summary-judgment motion, that belief existed when she filed her June 2, 2025 motion. Her failure to raise the issue then precludes raising it now.

{¶ 53} We note, moreover, that the record reflects American Express's summary-judgment motion contained a certificate of service indicating the motion was mailed to Jenkins at her address of record. Under Civ.R. 5(B)(2)(c), service is complete upon mailing, not upon receipt. A certificate of service creates a presumption of proper service that Jenkins's belated claim of nonreceipt does not overcome.

{¶ 54} Jenkins failed to raise the service issue in the Civ.R. 60(B) motion before us, and the issue is therefore barred.

{¶ 55} The second assignment of error is overruled.

**E. The Garnishment Proceedings**

{¶ 56} The third assignment of error alleges:

> DUE PROCESS VIOLATIONS AT THE JUNE 17, 2025 HEARING (BIAS, UNAUTHORIZED COUNSEL, EXPULSION OF SPOUSE; CORPORATE SEPARATENESS IGNORED).

{¶ 57} Jenkins's third assignment of error alleges that her due process rights were violated at the garnishment hearing because the magistrate permitted allegedly unauthorized counsel to appear, expelled her spouse from the courtroom, and refused to hear jurisdictional objections.

{¶ 58} As we have already determined, the trial court's July 11, 2025 garnishment

order is not final and appealable, and there is nothing for us to review.

{¶ 59} This conclusion is reinforced by mootness. "A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." (Cleaned up.) *State ex rel. Gaylor, Inc. v. Goodenow*, 2010-Ohio-1844, ¶ 10. No funds were recovered; the garnishees confirmed no money was available; no property changed hands. Even if the magistrate erred, there is nothing to remedy. Jenkins argues that mootness "addresses funds, not jurisdiction," but we have already concluded that the underlying judgment is not void. The garnishment proceedings therefore rest on a valid judgment, and mootness fully applies.

{¶ 60} The third assignment of error is overruled.

### F. Summary Judgment for American Express

{¶ 61} The fourth assignment of error alleges:

SUMMARY JUDGMENT ENTERED WITHOUT EVIDENCE
AND WITH IMPROPER BURDEN-SHIFTING.

{¶ 62} Jenkins's fourth assignment of error challenges the trial court's grant of summary judgment because American Express failed to submit sufficient evidence, improperly shifted the burden of proof, and ignored evidentiary presumptions.

{¶ 63} Jenkins challenges the May 19, 2025 summary judgment, but, as we have determined, she did not timely appeal that order. So this appeal is untimely as to the summary judgment itself. Jenkins's appeal is timely only as to the July 10, 2025 order denying her Civ.R. 60(B) motion for relief from judgment.

{¶ 64} Jenkins's contentions that American Express's evidence was insufficient, that the trial court improperly shifted burdens under *Dresher v. Burt*, 75 Ohio St.3d 280, 1996-Ohio-107, and that the court ignored evidentiary presumptions are quintessential appellate arguments. They challenge the legal correctness of the summary-judgment

ruling. Such arguments belong in a direct appeal of the ruling. They do not state grounds for relief under Civ.R. 60(B)(1) through (5). *See Doe*, 28 Ohio St.3d at 130.

**{¶ 65}** We note that the contentions would lack merit in any event. Under *Dresher*, when the moving party satisfies its initial burden of identifying record evidence demonstrating the absence of a genuine issue of material fact, the nonmoving party must set forth specific facts showing a genuine issue for trial. Civ.R. 56(E). Here, American Express supported its motion with the Cardmember Agreement, account statements, and an affidavit establishing ownership. Jenkins filed no response, no opposing affidavit, no controverting evidence. Having failed to respond to a properly supported motion, she cannot now complain that summary judgment was inappropriate. *See id*. ("If the party does not so respond, summary judgment, if appropriate, shall be entered against the party."). And arguments not presented to the trial court, including Jenkins's UCC tender-discharge theory, are forfeited on appeal. *See Asset Acceptance*, 2004-Ohio-6967, at ¶ 33.

**{¶ 66}** The fourth assignment of error is overruled.

### G. The Trial Court's Decision to Strike Jenkins's Counterclaims

**{¶ 67}** The fifth assignment of error alleges:

> COUNTERCLAIM STRUCK UNDER MISAPPLIED RES JUDICATA.

**{¶ 68}** Jenkins's fifth assignment of error challenges the trial court's decision to strike her counterclaims asserting violations of the FDCPA, the TILA, and the UCC's tender-discharge provisions. Jenkins contends that the trial court misapplied res judicata.

### 1. The Procedural Defect is Dispositive

**{¶ 69}** Jenkins filed her counterclaims after judgment had been entered against her. The summary judgment in favor of American Express was entered on May 19, 2025.

Jenkins filed her supplemental counterclaims on June 13, 2025, followed by additional counterclaim filings on July 7, 2025. Both of these filings came after the final judgment had been entered. By that point, the case had concluded and there was no pending action in which counterclaims could be asserted. The trial court's July 10, 2025 Decision and Entry is unambiguous on this point: "A final appealable order was entered on this case granting judgment. The filing of counterclaims at this point is not permitted by the rules of civil procedure." The court is correct.

{¶ 70} Civ.R. 13(A) is explicit about the timing of compulsory counterclaims: "A pleading shall state as a counterclaim any claim which *at the time of serving the pleading* the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ." (Emphasis added.). The rule thus requires that counterclaims be raised in a responsive pleading. Jenkins never filed an answer to the complaint. She never filed any responsive pleading before judgment. Only after the trial court granted summary judgment did Jenkins attempt to interpose affirmative claims against American Express.

{¶ 71} A counterclaim is not a free-floating pleading that may be lobbed into a case at any time. Rather, it must be asserted in connection with a responsive pleading. Once judgment has been entered, the time for pleading has passed. As American Express correctly notes, "the Rules of Civil Procedure do not allow for the filing of counterclaims after a judgment has been rendered."

{¶ 72} Jenkins points to Civ.R. 13(F), which permits a court to allow an omitted counterclaim to be set up by amendment "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires." But Civ.R. 13(F) presupposes that the party seeking to amend has filed some pleading that could be amended. It does not create an independent right to file counterclaims after final

judgment. Moreover, Jenkins never sought leave to amend under Civ.R. 13(F). She simply filed her counterclaims as though the judgment did not exist.

{¶ 73} We note too that Civ.R. 13(A) imposes an obligation on the *pleader*, not on the court. The rule states that "[a] pleading *shall state* as a counterclaim" any compulsory claim. (Emphasis added.). The duty to raise compulsory counterclaims rests with the party, and a party who never files a responsive pleading cannot complain that the court failed to adjudicate claims the party never asserted.

### 2. Jenkins Misconstrues the Trial Court's Ruling

{¶ 74} Jenkins devotes considerable effort to arguing that the trial court misapplied res judicata by relying on *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 1995-Ohio-331. She is correct that *Grava* addresses the preclusive effect of a prior final judgment on a *subsequent* action, holding that "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava* at syllabus. But the trial court did not cite *Grava* or res judicata doctrine to strike the counterclaims. The court's decision rests squarely on the timing requirements of the civil rules: counterclaims filed after final judgment "are not permitted by the rules of civil procedure."

{¶ 75} The trial court did not err in striking Jenkins's postjudgment counterclaims. Jenkins had ample opportunity to raise counterclaims by filing a responsive pleading before judgment was entered. She chose not to do so. The civil rules do not permit a party to circumvent the ordinary pleading requirements by filing counterclaims after the case has been decided. The trial court's ruling was procedurally sound.

{¶ 76} The fifth assignment of error is overruled.

### H. Recordkeeping Irregularities

{¶ 77} The sixth assignment of error alleges:

RECORDKEEPING IRREGULARITIES AND RECEIPT REVERSALS DEPRIVED APPELLANT OF A SETTLED RECORD.

{¶ 78} Jenkins's sixth assignment of error contends that recordkeeping irregularities and receipt reversals deprived her of a settled record, thereby violating her due process rights and impeding meaningful appellate review. Specifically, she points to receipt reversals purportedly entered months after substantive rulings, temporary restrictions on the June 17, 2025 hearing transcript, and alleged mishandling of her financial disclosure.

## 1. Failure to Invoke the Proper Remedy

{¶ 79} App.R. 9(E) provides a clear mechanism for addressing disputes about the accuracy of the appellate record. The rule states that "[i]f any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by the trial court and the record made to conform to the truth." App.R. 9(E). Critically, the rule contemplates that either the trial court or this court may direct correction of omissions or misstatements, but disputes about the accuracy of the record are properly resolved by the trial court in the first instance. *State v. Schiebel*, 55 Ohio St.3d 71, 82 (1990).

{¶ 80} Jenkins never availed herself of this remedy. She filed no motion under App.R. 9(E) to correct or supplement the record. She raised no objection in the trial court to any alleged recordkeeping irregularity, despite filing multiple separate motions seeking to vacate the underlying judgment. Not one of those filings mentioned receipt reversals, transcript access issues, or financial disclosure mishandling. Having failed to invoke the procedural mechanism specifically designed to address her complaints, Jenkins cannot now use those alleged deficiencies as a basis for reversing the judgment below. It is not the role of an appellate court to construct arguments that a party failed to make or to

provide relief that a party failed to request through proper channels.

## 2. Failure to Demonstrate Prejudice

{¶ 81} Even assuming Jenkins had properly preserved these claims, she would still be required to demonstrate that the alleged irregularities affected her substantial rights. Civ.R. 61 provides that no error or defect in any proceeding "is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice." The rule commands that courts "must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Civ.R. 61.

{¶ 82} Jenkins's brief makes only conclusory assertions that the alleged recordkeeping irregularities "prejudice Appellant by obstructing her ability to confirm what evidence and arguments are properly in the record." But she does not explain how any specific irregularity affected the merits of her case or prevented her from presenting her claims and defenses. She does not contend that any essential document is missing from the record transmitted to this Court. She does not argue that the alleged receipt reversals altered the substance of any filing or ruling. And she does not demonstrate that temporary restrictions on transcript access prevented her from briefing any issue on appeal.

{¶ 83} The record before us is complete. Jenkins has briefed her appeal. Every document and ruling relevant to the assignments of error she raises is available for our review. What Jenkins seeks is reversal of an adverse judgment based on peripheral administrative matters that have no demonstrated connection to the trial court's rulings. That is not a basis for relief.

{¶ 84} The sixth assignment of error is overruled.

## I. Statutory Violations

{¶ 85} The seventh assignment of error alleges:

> STATUTORY VIOLATIONS IGNORED (FDCPA, TILA, UCC
> TENDER DISCHARGE).

{¶ 86} Jenkins's seventh and final assignment of error contends that the trial court erred by ignoring statutory violations under the FDCPA, the TILA, and the UCC's tender-discharge provisions. This assignment of error overlaps considerably with Jenkins's fifth assignment of error regarding her stricken counterclaims. But whereas the fifth assignment challenged the procedural propriety of striking the counterclaims, this assignment challenges the trial court's alleged failure to address the underlying statutory claims.

{¶ 87} Beyond any substantive deficiencies, Jenkins's statutory claims suffer from the same procedural defects we identified in our analysis of the fifth assignment of error. These claims were not raised in an answer or asserted in a timely counterclaim. They were raised for the first time in postjudgment filings, after the case had concluded. The civil rules do not permit parties to inject new claims into a case after judgment has been entered.

{¶ 88} Jenkins argues that federal statutory rights cannot be denied by state procedural rules, citing *Testa v. Katt*, 330 U.S. 386 (1947), for the proposition that state courts must entertain federal causes of action. *Testa* held that state courts may not discriminate against federal claims by refusing to hear them while entertaining analogous state claims. It did not hold that state courts must disregard their own procedural rules to accommodate untimely federal claims. Ohio's procedural rules requiring that counterclaims be asserted in a responsive pleading and that claims be raised before judgment are neutral rules of general applicability. They do not single out federal claims

for disfavored treatment. Jenkins's FDCPA and TILA claims were subject to the same procedural requirements as any other claim. Her failure to comply with those requirements resulted in forfeiture, regardless of the federal character of the underlying statutes.

{¶ 89} The trial court did not err in striking Jenkins's postjudgment counterclaims. Civ.R. 13 required those claims to be raised in a timely responsive pleading. Jenkins filed no answer and asserted no counterclaims until after final judgment. The trial court correctly recognized that "the filing of counterclaims at this point is not permitted by the rules of civil procedure."

{¶ 90} The seventh assignment of error is overruled.

### III. Conclusion

{¶ 91} We have overruled each of the assignments of error presented. The trial court's judgment is affirmed.

PIPER, P.J., and SIEBERT, J., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robin N. Piper, Presiding Judge

/s/ Mike Powell, Judge

/s/ Melena S. Siebert, Judge